IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LONNIE DEE BROWN,                      )
                                       )
            Petitioner,                )
                                       )
                                       )      CIV-16-48-F
v.                                     )
                                       )
TRACY McCOLLUM, Warden,                )
                                       )
            Respondent.                )

REPORT  AND  RECOMMENDATION

Petitioner, a state prisoner appearing with counsel, has filed this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  Petitioner is challenging the convictions for Rape in the First Degree (victim under 14 years of age) (count one), First Degree Rape by Instrumentation (count two), Forcible Sodomy (count three), Lewd Acts with Child Under 16 (count four) and Lewd Acts with Child Under 16 (count five). entered in the District Court of Cleveland County, Case No.  CF-2011-1341.  Respondent has responded to the Petition and filed the relevant state court records, including the transcript of Petitioner's trial (hereinafter "TR ___."). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  For the following reasons, it is recommended that the Petition be denied.

I. Background

In a six-day jury trial conducted in April 2013, Petitioner was found guilty of five

1

offenses involving multiple sexual assaults and molestation of his minor granddaughter, S.B. Pursuant to Okla. Stat. tit. 12, § 2803.1[1], the trial court held a hearing outside of the presence of the jury concerning the admissibility of S.B.'s hearsay statements to third parties describing the sexual offenses. At the conclusion of the hearing, the court determined that S.B.'s hearsay statements were admissible. TR vol. II, at 356. The court also determined that a videotaped forensic interview conducted with S.B. by a hospital social worker was admissible. TR vol. I, at 33.

During the jury trial, S.B., S.B.'s grandmother, who had adopted S.B. in 2004, S.B.'s aunt (Petitioner's daughter), two police detectives, a physician's assistant, an elementary school principal, and a hospital social worker all testified. Videotaped interviews of S.B. and Petitioner were also admitted into evidence.

Consistent with the jury's recommendation, Petitioner was sentenced to life imprisonment without parole for each of the rape convictions, 20 years of imprisonment for the sodomy conviction, and life imprisonment for the lewd acts convictions. The trial court ordered the sentences to run concurrently with each other.

In a direct appeal, Petitioner asserted that (1) he was denied the right to confront and cross-examine S.B.; (2) because S.B. was not available to be cross-examined her hearsay

---

[1]This statute, first adopted in Oklahoma in 1984, provides a hearsay exception for the statements of children younger than 13 or persons with a disability describing "any act of physical abuse against the child or incapacitated person or any act of sexual contact performed with or on the child or incapacitated person by another" after a hearing and conditioned upon the availability of the child or incapacitated person to testify. Okla. Stat. tit. 12, § 2803.1(A). The statute further provides that if the child or incapacitated person is unavailable to testify, the hearsay statements are still admissible if there is corroborative evidence of the act(s). Id. at 2803.1(A)(2)(b).

statements made to third parties were inadmissible and the admission of these statements deprived him of a fair trial; (3) the trial court committed reversible error in allowing the jury to have access to the DVD recording of a forensic interview with S.B. during deliberations; and (4) cumulative errors deprived him of a fair trial. The Oklahoma Court of Criminal Appeals ("OCCA") issued a lengthy opinion in which the appellate court rejected each of Petitioner's claims and affirmed the convictions and sentences.

In his Petition, Petitioner has raised two grounds for habeas relief. In Ground One, Petitioner asserts that he was denied his right to confront and cross-examine the prosecution's witness, S.B. In Ground Two, Petitioner asserts that because S.B. was unavailable as a witness the admission into evidence of third-party testimony concerning S.B.'s hearsay statements denied him a fair trial. Petitioner raised these claims in his direct appeal.

II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal court cannot grant habeas relief with respect to a claim of a constitutional deprivation raised by a state prisoner that was adjudicated on its merits in state court proceedings unless the (1) state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The AEDPA directs courts to "ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." Williams v.

Taylor, 529 U.S. 362, 386 (2000)(quoting H. R. Conf. Rep. No. 104-518, p. 111 (1996)).

A state court decision is "contrary to" established Supreme Court precedent if the state court either (1) reached a conclusion that contradicts governing Supreme Court precedent or (2) reached a conclusion different from the Supreme Court on materially indistinguishable facts. Id. at 405-406, 413. A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court "applies [the Supreme] Court's precedents to the facts in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005); Williams, 529 U.S. at 407. See Price v. Vincent, 538 U.S. 634, 640-641 (2003).

"[W]hether a state court's decision was unreasonable must be assessed in light of the record the [state appellate] court had before it." Holland v. Jackson, 542 U.S. 649, 652 (2004)(per curiam)(citations omitted). See Cullen v. Pinholster, 563 U.S. 170, 181 (2011)(federal habeas "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"). Further, state-court findings of fact are presumed correct and entitled to deference. 28 U.S.C. § 2254(e)(1). This presumption may be overcome only by clear and convincing evidence. Id.

III. Right of Confrontation and Cross-Examination

Petitioner contends that his Sixth Amendment right of confrontation was denied due to the principle prosecution witness S.B.'s refusal to be cross-examined during Petitioner's trial. Petitioner asserts that the OCCA's rejection of this claim was contrary to the Supreme Court's decision in Davis v. Alaska, 415 U.S. 308 (1974). The State responds that the OCCA's rejection of this claim in Petitioner's direct appeal was not contrary to, or an

4

unreasonable application of, the <u>Davis</u> decision and that Petitioner was provided an adequate opportunity to cross-examine S.B.

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." In <u>Davis</u>, the Supreme Court found the defense was prevented from effectively impeaching the State's principle witness, Mr. Green, who was on probation by order of a juvenile court after having been adjudicated a delinquent for burglarizing two cabins. Green was testifying against Davis, the defendant, as an eyewitness who stated he observed Davis trying to open a safe that had been reported stolen from a local business.

The Court held that without the admission of evidence pertaining to Green's prior juvenile adjudication it was not possible for the defense to present to the jury relevant evidence concerning Green's bias and possible motivation for testifying falsely and no other evidence permitted defense counsel to challenge Green's credibility. As the Supreme Court observed, "[w]hile counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial." <u>Id.</u> at 318.

The Court reasoned in <u>Davis</u> that "[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*." <u>Id.</u>. at 315–16 (internal quotation marks and citation omitted)(emphasis in original). Cross-examination, as the Court explained, permits an accused the opportunity to test the believability of a witness as well as the truthfulness of that witness's testimony. <u>Id.</u> at 316. Noting that "[s]erious damage to the

strength of the State's case would have been a real possibility had [Davis] been allowed to pursue this line of inquiry," the Court concluded that "[i]n this setting . . . the right of confrontation is paramount to the State's policy of protecting a juvenile offender." Id. at 319. "The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness." Id..

In a subsequent decision, Delaware v. Fensterer, 474 U.S. 15 (1985) (*per curiam*), the Court further interpreted the meaning of the Sixth Amendment's right of confrontation. In Fensterer, the Court held that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Id. at 20 (emphasis in original). "[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities [such as forgetfulness, confusion, or evasion] through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." Id. at 22. Because "the denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case," the denial of a defendant's right to confrontation is subject to harmless error review. Delaware v. Van Arsdall, 475 U.S. 673, 682, 684.

In this case, the trial court did not place any limitations on Petitioner's ability to cross-examine the prosecution's witness, S.B. S.B. was only ten years old at the time of trial, and

she was testifying concerning events that had occurred two years earlier involving her grandfather. The OCCA made extensive factual findings in its decision concerning the circumstances of the offenses, S.B.'s trial testimony, the testimony of other witnesses and evidence admitted at trial, and the circumstances of the trial. Although Petitioner has attempted to re-state the facts, Petitioner has not overcome the presumption of correctness attached to OCCA's factual findings with clear and convincing evidence. 28 U.S.C. §2254(e)(1). Thus, the Court should defer to those findings.

First, the OCCA found that Petitioner's claim S.B. refused to be cross-examined was "not supported by the record. S.B. appeared in both the State's case-in-chief and the defense's case-in-chief. Although she was at times non-responsive to questions from both the prosecutor and defense counsel, she affirmed the statements in her forensic interview concerning specific acts of wrongdoing by [Petitioner] and [Petitioner] was afforded an opportunity to question her." Response, Ex. 4, at 4-5. The OCCA went on to specifically describe S.B.'s testimony for the prosecution in which S.B. "agreed that things happened between her and [Petitioner] that were 'not okay.' She recalled talking to a 'lady' at the hospital about the 'stuff' that happened between her and [Petitioner] and said her statements at the hospital were true." Id. at 5.

During cross-examination, the OCCA found that defense counsel "confirmed that S.B. had talked to a social worker at the hospital about the things that happened between her and [Petitioner] and that she did not want to talk about those things in court. Defense counsel asked if the reason she did not want to talk about her statement was because it was untrue and

S.B. said, 'It is true.'" Id.  The record shows that although S.B. refused to respond to additional questioning by defense counsel, S.B. returned to testify in the defense's case-in-chief.  In order to encourage her to testify, as the OCCA found,

> [t]he parties agreed to allow S.B. to testify from an adjoining room using a camera and microphone.  S.B. was very responsive and answered defense counsel's questions concerning her relationships with her mother, aunt, cousin, uncle and biological father.  Defense counsel asked about schedules for snack time at her grandmother's house, computers belonging to her biological father and grandmother, and whether her grandmother ever gave her a popsicle.  All of these questions mirrored the allegations leveled against [Petitioner] by S.B. and were clearly intended to show the possibility that S.B.'s allegations against [Petitioner] were misdirected and arose because of other individuals in her life.

Id. at 6.

The OCCA made additional findings concerning S.B.'s testimony for the defense:

> S.B. also described the night she told her grandmother about the abuse.  She responded to questions about vaginal and anal sex, but became uncooperative when it appeared to her that defense counsel was repeating questions she had already answered.  The parties agreed to allow the prosecutor to cross-examine S.B. and she agreed to answer the prosecutor's questions.  She said that on more than one occasion she put her mouth on [Petitioner's] penis and that 'white stuff' came out that she swallowed.  She said that her prior testimony that [Petitioner] put his penis in her vagina and 'butt' was the truth and that she saw pornography on [Petitioner's] computer. On redirect, S.B. became unresponsive and the court called a recess.  After the break, S.B. answered only selective questions[,] at times turning off the microphone.  The district court ended S.B.'s testimony subject to recall until she was ready to be responsive to questions.  Defense counsel agreed to consider his options about further questioning of S.B. as the trial continued.

Id. at 6-7 (footnote omitted).

Later during the trial, as found by the OCCA, "defense counsel announced his belief that further examination of S.B. would be futile, arguing he had been denied a 'real' opportunity to cross-examine S.B. and asked the court to declare S.B. unavailable under 12 O.S.2011, § 2804(A)(2). The prosecutor argued that S.B. had not engaged in a persistent refusal to testify about the subject matter of her statements in defiance of a court order. . . . At the conclusion of that argument, the district court refused to declare S.B. unavailable, finding she had testified to the best of her ability." Id. at 7.

Based on these factual findings, the OCCA concluded that no Confrontation Clause violation occurred during Petitioner's trial and that "[t]he district court did not err in rejecting [Petitioner's] request to declare S.B. unavailable because of her non-responsive answers to some questions." Id. at 8. The OCCA reasoned that

> S.B. was ten years old when she testified at trial. It was clearly a difficult experience for her. She testified positively that [Petitioner] had molested and raped her and gave some additional details. Although the prosecutor and defense counsel chose to conduct limited questioning during S.B.'s appearance in the state's case, she appeared when called in the defense case and answered many questions. It is important to note that S.B.'s refusal to answer some questions, such as it was, had its own value as a type of confrontation and defense counsel took full advantage of it, arguing in closing that S.B.'s silence was a sign of dishonesty. S.B.'s lack of responsiveness on the stand and counsel's decision to discontinue examining her fit within [Petitioner's] trial strategy. The district court was more than willing to allow [Petitioner] to recall S.B. for further questioning. He understandably elected not to do so because of the negative impression it could have had on the jury. Because the district court placed no restrictions on [Petitioner's] questioning and he was free to ask S.B. about her allegations and prior statements, we find that Brown was not denied his

right to confront his accuser and was afforded an adequate opportunity to test her credibility on cross-examination.

Id. at 8-9.

In consideration of the trial record as a whole and the OCCA's factual findings, Petitioner has not shown that the OCCA's rejection of his Confrontation Clause claim was contrary to the Supreme Court's decision in Davis, the case on which Petitioner relies.[2]  The record showed that S.B. appeared at trial and provided testimony for both the prosecution and the defense concerning the alleged crimes.  Petitioner has not correctly interpreted the trial record when he states that S.B. "refused to be called out to explain herself on cross-examination." Petitioner's Petition, at 14.  Petitioner's defense counsel questioned S.B. and obtained her affirmation that her statements to other individuals and the acts of which Petitioner was accused were true.  Petitioner does not suggest any bias or motivation to testify falsely on the part of S.B.  He merely contends that he was unable to fully explore her *possible* bias or prejudice.

The Court in Davis, and also in Fensterer, did not conclude that the right of confrontation extends to any questioning that a defense counsel might wish to propound to a prosecution witness during a trial.  Rather, the Court in Davis held that the defense in that case was unable to present specific evidence that very likely would have seriously damaged

_____

[2]The OCCA did not cite the Davis decision, but cited to the Confrontation Clause principles espoused in Fensterer, as quoted in United States v. Owen, 484 U.S. 554 (1988).  The OCCA's failure to address the Davis decision does not affect this Court's review of the OCCA's decision under 28 U.S.C. § 2254(d).  See Early v. Packer, 537 U.S. 3, 8 (2002)(holding state court need not cite to Supreme Court cases in reaching its decision "so long as neither the reasoning nor the result of the state-court decision contradicts them").

the prosecution's case because it would have tended to show the prosecution's principle witness had a bias or motivation for testifying falsely against the petitioner.

In this case, nothing in the trial record, including S.B.'s trial testimony, indicated that S.B. was biased or had a motive for testifying falsely against Petitioner. All of the witnesses who testified for the State testified that Petitioner and S.B. appeared to have a close relationship, and the witnesses' testimony revealed that S.B.'s statements concerning the assaults and abuse were consistent. Petitioner admitted during his own testimony that he did not believe S.B. was lying. TR vol. V, at 1001. Moreover, during closing argument Petitioner was able to use S.B.'s reticence in testifying as a strategic defense, arguing that her refusal to answer some questions propounded by defense counsel was indicative of her dishonesty. TR vol. VI, at 1101-02.

Because the OCCA's decision was not contrary to, or an unreasonable application of, controlling Supreme Court precedent, Petitioner is not entitled to habeas relief concerning this claim.

IV.  Right of Confrontation and Hearsay

Petitioner contends in a second ground for habeas relief that the trial court violated his right of confrontation in admitting S.B.'s hearsay statements to third parties because S.B.'s hearsay statements were testimonial and S.B. was an "unavailable" witness. Petitioner contends that the OCCA's rejection of this claim was contrary to the Supreme Court's decisions in Crawford v. Washington, 541 U.S. 36 (2004), and Davis v. Washington, 547 U.S. 813 (2006).

Without determining which, if any, of S.B.'s statements to third parties were testimonial, the OCCA rejected Petitioner's claim of a constitutional violation or trial court error due to the admission of S.B.'s hearsay statements, concluding that Petitioner's "failure to show that S.B. was unavailable defeats his claim that he was denied a fair trial by the admission of S.B.'s hearsay statements to third parties." Response, Ex. 4, at 9.

The OCCA further recognized that Okla. Stat. tit. 12, § 2803.1,

> provides a specific hearsay exception that allows admission of hearsay statements made by a child under the age of thirteen regarding 'any act of sexual contact performed with or on the child.' The State gave notice it would offer S.B.'s various hearsay statements under § 2803.1. The district court held a hearing, found S.B.'s detailed statements reliable, and admitted her statements to the social worker, her grandmother and aunt. Here, S.B. appeared at trial, testified, and was subject to cross-examination. There was no error in the admission of her hearsay statements. This claim is denied.

Id. at 9-10.

In Crawford, the Supreme Court considered the confrontation rights of an individual whose wife's tape-recorded statement to police while in custody was admitted into evidence at Crawford's trial despite his wife's absence from the trial due to the state's marital privilege. The Court held that where such "testimonial evidence is at issue, . . ., the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Crawford, 541 U.S. at 68. Thus, "[t]he upshot [of Crawford] is that the [Confrontation] Clause constitutes an absolute bar to the admissibility of a testimonial hearsay statement where the declarant was unavailable to testify at trial and the defendant

had no prior opportunity to cross-examine the declarant." <u>United States v. Clark</u>, 717 F.3d 790, 815 n. 15 (10th cir. 2013)(internal quotation marks and brackets omitted).

In explaining the term "testimonial," the Court declined to provide a full definition of the term but stated that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." <u>Id.</u> Thus, under the <u>Crawford</u> decision, the out-of-court testimonial statements of a witness who is unavailable to testify at trial are not admissible unless the defendant had a prior opportunity to cross-examine the witness.

In <u>Davis</u>, the Court considered whether statements made by a witness to a 911 emergency operator were testimonial and subject to the rule announced in <u>Crawford</u>. The Court held that the "primary purpose" of the 911 call "was to enable police assistance to meet an ongoing emergency" and the statements were therefore not testimonial. <u>Davis</u>, 547 U.S. at 828-29. The statements were therefore admissible at trial.

In this case, the first issue is whether any of S.B.'s hearsay statements admitted during Petitioner's trial could be considered testimonial. S.B.'s statements made during a forensic interview with a hospital social worker, Ms. Baum, were arguably testimonial. Ms. Baum testified that the purpose of the interview was to determine whether S.B. should be medically examined and, if so, what type of medical examination should be performed. TR vol. III, at 557. However, Ms. Baum also testified that she conducted the interview in "a legally sound way that would stand up in court. <u>Id.</u> at 552. Additionally, a police detective testified that

Ms. Baum alerted him that she was going to conduct the interview with S.B., and Ms. Baum sent a copy of the videotaped interview to a police detective. TR vol. IV, at 762.

S.B. appeared and testified both at Petitioner's preliminary hearing, where she was cross-examined, and at Petitioner's trial. However, Petitioner contends that S.B. was "unavailable" during his trial because she refused to be cross-examined by Petitioner's counsel. As the undersigned has previously found, the record shows that S.B. appeared at Petitioner's trial and provided testimony for both the prosecution and the defense concerning the alleged crimes. Although she did refuse to answer some questions propounded by Petitioner's defense counsel, Petitioner has not correctly interpreted the trial record when he states that S.B. "refused to be called out to explain herself on cross-examination." Petitioner's Petition, at 14. Petitioner's defense counsel questioned S.B. and obtained her affirmation that her statements to other individuals and the acts of which Petitioner was accused were true. S.B. responded to Petitioner's defense counsel's questioning concerning her activities at her grandmother's home, and these questions and responses gave Petitioner an "opportunity to reveal weaknesses in the witness' testimony," which is all that is required by the Confrontation Clause. See United States v. McHorse, 179 F.3d 889, 900 (10th Cir. 1999)("[T]he demands of the Confrontation Clause are satisfied where a defendant has the opportunity to reveal weaknesses in the witness' testimony."). Moreover, Petitioner's defense counsel used S.B.'s silence as a defense strategy in arguing that her silence was indicative of dishonesty.

The OCCA's rejection of Petitioner's Confrontation Clause claim was not contrary

to or an unreasonable application of the Supreme Court's decisions in <u>Crawford</u> or <u>Davis.</u>

S.B.'s statements to her grandmother (who testified she fostered and then adopted S.B.) and her aunt about abuse that had just occurred were not testimonial in nature. These statements were made to family members, the statements involved an emergency situation, and the statements did not have "the primary purpose of creating evidence for [Petitioner's] prosecution." <u>See</u> <u>Ohio v. Clark</u>, __ U.S. __, 135 S.Ct. 2173, 2181 (2015)(finding minor's statements to preschool teachers concerning "an ongoing emergency involving suspected child abuse" "clearly were not made with the primary purpose of creating evidence for Clark's prosecution" and, thus, "their introduction at trial did not violate the Confrontation Clause"); <u>Michigan v. Bryant</u>, 562 U.S. 344, 358 (2011)(reiterating that "[w]hen, as in *Davis*, the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause"). Moreover, S.B. was only eight years old at the time of the interview, and, as the Court recognized in <u>Clark</u>, "[s]tatements by very young children will rarely, if ever, implicate the Confrontation Clause." <u>Id.</u> at 2182.

The only precedential decision cited by Petitioner in support of his conclusion that S.B.'s statements to third parties were "all testimonial" is the Tenth Circuit's decision in <u>United States v. Summers</u>, 414 F.3d 1287 (10th Cir. 2005). That case, unlike the one here, involved a hearsay statement made after the declarant had been taken into physical custody by police officers. <u>Id.</u> at 1302-03. The court found that the declarant's statement was also "loosely akin to a confession" as it implicated both himself and another individual in a crime.

Id. at 1303. Based on these circumstances, the court found the statement was testimonial hearsay. S.B.'s statements to her grandmother and aunt bear no resemblance to the circumstances present in Summers. The OCCA reasonably determined that Petitioner's Confrontation Clause rights were not violated by the admission of S.B.'s hearsay statements to her grandmother and aunt at Petitioner's trial.

Thus, S.B.'s statements to her grandmother and aunt are subject only to the state's evidentiary rules governing such out-of-court statements. The trial court's evidentiary ruling is a matter of state law that normally is not subject to habeas review. See Wilson v. Sirmon, 536 F.3d 1064, 1101 (10th Cir. 2008)("As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence."). "Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court on habeas review will not disturb the state court's evidentiary ruling unless it was 'so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" Id. (quoting Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000)).

In Oklahoma, a district court must conduct an *in camera* hearing to determine the admissibility of statements made by a child under the age of thirteen regarding "any act of sexual conduct performed with or on the child." Okla. Stat. tit. 12, § 2803.1. The record shows, as the OCCA found, that the district court in Petitioner's case held a hearing and determined that S.B.'s hearsay statements were reliable and therefore admissible under Okla. Stat. tit. 12, § 2803.1. The trial court stated at the conclusion of the hearing that S.B.'s

hearsay statements were admissible as "[t]here is nothing to indicate a lack of [sic] motive to fabricate nor that the mental state of the declarant is questionable." TR Vol. II, at 356. The trial court also determined that the witness, S.B., "was here, responded to some questions, did not respond to others. And both the State and the defense passed her. So . . . she is available, has testified. The hearsay statements will still come in." TR vol. III, at 498-99.

Petitioner contends that the district court's "refusal to declare S.B. unavailable was clearly erroneous." Petitioner's Petition, at 14. Petitioner's argument conflates the "availability" of a witness for purposes of the Oklahoma hearsay exception law with a witness' "availability" for purposes of the Confrontation Clause. Even assuming that S.B. was not an "available" witness under Oklahoma's hearsay exception law, Petitioner has not shown how the district court's ruling on this state evidence issue also constituted a constitutional violation.

The undersigned previously found that the introduction of S.B.'s hearsay statements during her interview with Ms. Baum and to her grandmother and aunts did not violate the Confrontation Clause. Petitioner's argument that the district court erroneously applied Oklahoma state law does not allege the denial of a federal constitutional right separate from the Confrontation Clause claims that have been previously resolved herein.[3]

_____

[3]Petitioner's related claim that the state district court violated his Confrontation Clause rights by allowing S.B. to testify via closed-circuit television alleges only a violation of state law, not a constitutional deprivation. See Maryland v. Craig, 497 U.S. 836 (1990)(holding the Confrontation Clause did not categorically prohibit a child witness in a child abuse case from testifying against the defendant at trial, outside of the defendant's physical presence, via one-way closed circuit television).

Petitioner testified at his trial and testified that he believed S.B. was not lying but was just confused. However, Petitioner's statements during his videotaped custodial interview, which were described by police detectives during his trial, and Petitioner's conduct after S.B.'s grandmother informed him S.B. would not be staying with him again were consistent with his guilt. Petitioner has failed to show that the admission of the hearsay statements at issue here was so "grossly prejudicial" that the admission "fatally infected" his trial "and denied the fundamental fairness that is the essence of due process." See Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002)(internal quotation marks and citations omitted).


## RECOMMENDATION

Based on the foregoing findings, it is recommended that the Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court by _____ May 9th _____, 2016, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States of America, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this _____19th_____ day of ___April___, 2016.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE